SALISBURY v. HENION.

(Supreme Court, Appellate Division, Fourth Department. May 4, 1910.)

1. EXECUTORS AND ADMINISTRATORS (§ 451*)—CLAIMS AGAINST ESTATE—ACTIONS—SUFFICIENCY OF EVIDENCE.

In an action against an estate for the price of stock alleged to have been bought by plaintiff under an agreement with decedent to take it, evidence *held* to present a jury question as to whether plaintiff purchased stock pursuant to decedent's telegram agreeing to take stock if plaintiff bought it, or whether he bought the stock after he had received subsequent notice from decedent that decedent would not take it.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 451.*]

2. TRIAL (§ 140*)—QUESTION FOR JURY—CREDIBILITY OF WITNESSES.

The credibility as a witness of plaintiff interested in the outcome of the litigation is for the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 335; Dec. Dig. §. 140.*]

3. EXECUTORS AND ADMINISTRATORS (§ 221*)—CLAIMS AGAINST ESTATE—ADMISSIBILITY OF EVIDENCE.

In an action against an estate for the price of stock alleged to have been bought by plaintiff on decedent's agreement to buy it from plaintiff, where plaintiff claimed to have bought the stock pursuant to a telegram of decedent agreeing to take it, and that decedent subsequently notified plaintiff that he would not take the stock, copies of a telegram alleged by plaintiff to have been sent by him making an offer for the stock, pursuant to decedent's telegram agreeing to take it, and of a telegram alleged to have been received by plaintiff accepting his offer for the stock before decedent's notice that he would not take it, both copies claimed by plaintiff to be in his possession, together with a letter from plaintiff to the seller of the stock directing how to make out the certificates, were admissible in evidence as part of the transaction to show when the telegrams and letter were sent.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 221.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Appeal from Trial Term, Monroe County.

Action by David N. Salisbury against Bert N. Henion, executor of John B. Henion. There was a directed verdict for plaintiff, and, from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

George P. Decker, for appellant.
John H. Agate, for respondent.

KRUSE, J. The plaintiff presented a claim against the estate of John B. Henion, deceased, for the purchase price of 2,500 shares of capital stock of the Beulah Copper Company, amounting to $1,750, with interest from the 1st day of June, 1902. The claim was rejected by the defendant executor, and thereupon this action was commenced. At the close of the evidence, the trial court directed a verdict in favor of the plaintiff for the full amount claimed.

The plaintiff, in his complaint, alleges that on or about the 29th day of May, 1902, the defendant's testator, John B. Henion, agreed in writing with the plaintiff that, if plaintiff would buy 5,000 shares of the capital stock of the Beulah Copper Company, he would buy, accept, and receive from the plaintiff 2,500 shares thereof, and pay him 70 cents par value therefor; that thereafter, and on or about June 1, 1902, the plaintiff bought, and on June 2d paid for, 5,000 shares of such capital stock in reliance upon the agreement; that on or about the 1st day of June, 1902, the plaintiff notified Henion that he had purchased the stock, but that thereafter, and on the 2d day of June, 1902, Henion refused to buy or accept the 2,500 shares or any part thereof or pay therefor, that the plaintiff still holds the stock and always has been and still is ready and willing to transfer the same, first, to Henion during his lifetime, and, after his death, to the defendant executor, Henion having died March 10, 1906, and the defendant having been appointed executor of his will by the surrogate of Monroe county on or about May 10, 1906. The plaintiff gave proof of all the allegations contained in the complaint, but the primary question is whether the allegations were conclusively proven, so as to warrant the direction of the verdict.

John B. Henion, the testator, was a resident of Boston, Mass. For several years before his death he had been a client of the plaintiff, who was a practicing attorney in the city of Rochester, this state. On the 27th day of May, 1902, the plaintiff sent to Henion the following telegram:

"May 27th, 1902.

"To Dr. Jno. B. Henion, 11 Beacon Street, Boston, Mass.—If I buy five thousand shares Beulah will you take half of me at 70?

"David N. Salisbury."

On May 29th, Henion telegraphed to the plaintiff as follows:

"Changed my mind will take part or all five thousand shares Beulah at 70 cents.        J. B. Henion."

On Sunday, June 1st, the plaintiff telegraphed Henion that he had "secured stock to be paid for Monday," and on Monday, June 2d, Henion wrote a letter to the plaintiff, which was received by plaintiff June 3d. In that letter Henion says:

"Your second telegram just reached me and I am sorry to tell you that I cannot take any of the stock, I did not hear from you Saturday, as you promised so I took the 3000 shares of Mr. Richards at 80 cents and have no more money. Your first dispatch Saturday did not reach me until 11 p. m. I had retired.                                        Yours in haste."

It is not entirely clear that Henion's telegram of May 29th is a reply to the plaintiff's telegram of May 27th. But, assuming that to be so, from Henion's letter it would seem that other telegraphic communication passed between the parties on Saturday, May 31st, the nature of which is not disclosed.

The plaintiff claims that he purchased the stock on June 1, 1902, of the Fishback Investment Company; that he made an offer for the stock on May 31st, and that on the next day, June 1st, he received a telegram saying that he could have it; and that on Monday morning, June 2d, he sent a draft for the stock, and telegraphed that he had sent the money. The plaintiff does not disclose the name of the person, nor the place to which he sent the purchase price, but presumably it was the person of whom or through whom he claims to have purchased the stock. The stock so claimed to have been bought by the plaintiff is represented by five certificates, each for 1,000 shares, of the par value of $1 a share, issued to Charles F. Fishback, dated June 2, 1902, with an assignment indorsed thereon by Fishback to the plaintiff, dated June 6, 1902. The plaintiff is unable to state the precise day when the certificates reached him, but testified that it was some time after the 6th of June.

Upon cross-examination the plaintiff testified that he had a copy of the telegram in which he made an offer for the stock on May 31st, and was asked whether he would let the defendant's counsel see it, to which he replied, "No; not unless the court rules that it is competent," and to which he then immediately objected as immaterial and incompetent. Thereupon plaintiff was asked, "Do you refuse?" and that was objected to by him as incompetent, and the objection sustained. Defendant's counsel then asked the court to direct the witness to produce the telegram, to which the court replied that the objection had been sustained, and gave the defendant an exception.

Plaintiff further admitted upon cross-examination that he had the telegram which he claimed to have received on the 1st of June, saying that he could have the stock in reply to the telegram of May 31st. He was likewise asked whether he would let the defendant's counsel see it, which was objected to as immaterial and incompetent, and the objection sustained. He further testified that he communicated with the man of whom he purchased the stock by giving him directions how the certificates were to be made out; that he told him to make them out in four 1,000 share certificates, and two 500; that he gave the direction by letter. He was unable to state when he had such communication or to give the date of the letter; but he testified that he

had the letter, and was asked whether he would let the defendant's counsel see it, which was objected to as immaterial and incompetent, the objection sustained, and an exception taken. He further stated that he could tell the date of the letter by looking at it. He was then asked to look at the letter and tell when it was dated. That was objected to as immaterial, and the objection sustained and exception taken. He was further asked whether in his letter of instructions he told the vendor to issue the certificates in his own name. He replied that he did not recall. He was asked to refer to the letter to refresh his recollection on that point. That was objected to as immaterial and sustained, and exception taken. Objections were sustained to other questions relating to the stock, but it is unnecessary to refer to them.

Anna L. B. Harris was sworn for the defendant, and testified that almost every time the doctor (Henion) came to Rochester the plaintiff came to her home (the old home of Dr. Henion); that she was present at a conversation between them at her home, in 1902, after June 1st, in which the plaintiff asked the doctor what was the present price of the stock and how they were getting along in the mines; that Dr. Henion told him how they were getting along, and said that he had better change his Beulah stock into the new company that they had organized; that the plaintiff said, "No," he would keep it as it was, and take his chances of its amounting to something; that Dr. Henion said, "The stock at that time could be sold for a dollar a share." The plaintiff denied that he had had any such interview. There is no evidence that plaintiff ever offered to deliver to Henion the stock after he had received the letter of June 2d from Henion, or made any reply to the letter, or ever had any conversation with him upon the subject, or referred to the transaction in any way, or made any demand upon him, or asserted any claim against him whatever until after his death, although Henion lived nearly four years after the plaintiff claims to have purchased the stock.

We are of the opinion that questions of fact were presented by the evidence which should have been submitted to the jury. It was a question of fact whether the plaintiff ever purchased any stock pursuant to Henion's telegram of May 29th, and whether he purchased any stock at all until after he had received notice that Henion had purchased stock elsewhere. The plaintiff was interested in the outcome of the litigation, and the credibility of his testimony was for the jury, especially in view of his objections and failure to produce the telegrams and letter above referred to. The jury could have found that the interview between the plaintiff and Henion took place as testified to by the witness Harris. That interview is entirely inconsistent with the claim which the plaintiff now makes, that he was holding the stock for Henion, and was ready and willing to deliver it over to him, or that he had any claim against him whatever arising out of the purchase of the stock, or Henion's offer to buy the stock.

Furthermore, we think the court erred in refusing to permit the plaintiff to be interrogated in regard to said telegrams and letter, and in not requiring him to produce them. They related to the very trans-

actions in controversy, and regarding which the plaintiff had given testimony.

The order should be reversed and a new trial granted, with costs to the appellant to abide the event. All concur.